

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**ENTERED**
**03/28/2014**

| | |
|---|---|
| IN RE: § | |
| SHIPLEY GARCIA ENTERPRISES LLC; dba § | CASE NO: 11-20016 |
| RIO GRANDE VALLEY HARLEY § | |
| DAVIDSON; dba RGV HARLEY § | |
| DAVIDSON; dba ROADRUNNER HARLEY § | |
| DAVIDSON; dba ROADRUNNER BUELL; § | |
| dba RIO GRANDE VALLEY BUELL § | |
|     Debtor(s) § | |
| § | CHAPTER  7 |
| § | |
| SHIPLEY GARCIA ENTERPRISES, LLC, *et* § | |
| *al* § | |
|     Plaintiff(s) § | |
| § | |
| VS. § | ADVERSARY NO. 13-02012 |
| § | |
| HARLEY-DAVIDSON MOTOR COMPANY, § | |
| INC., *et al* § | |
|     Defendant(s) § | |

## <u>MEMORANDUM OPINION AND ORDER ON MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT</u>

On this day came on for consideration the Motion for Leave to File Fourth Amended Complaint filed by the Plaintiffs, Shipley Garcia Enterprises, LLC ("Shipley Garcia"), and Bobby R. Garcia ("Mr. Garcia") (collectively the "Plaintiffs") and the Request for Dismissal of Plaintiffs' Fourth Amended Complaint, filed by Harley-Davidson Motor Company, Inc. ("Harley Davidson"), Haley-Davidson Credit Corporation ("Harley Credit"), Ricardo Mendoza Contreras, and Estes Okon Thorne & Carr, PLLC ("EOTC")( collectively the "Defendants"). The Court, having reviewed the pleadings and briefs on file herein, and having heard the arguments of counsel, finds as follows.

## PROCEDURAL BACKGROUND

The Plaintiffs' Motion represents their request to amend their complaint for the fifth time. On December 13, 2013, Plaintiffs filed their Original Petition in the 275th District Court of Hidalgo County, Texas (the "State Court Action"). However, Plaintiffs' Original Petition was not served on any of the original defendants until May 1, 2013. The State Court Action was removed to the McAllen Division Bankruptcy Court on May 24, 2013. Plaintiffs filed and served their Amended Complaint on June 14, 2013. Defendants filed their Motion to Dismiss First Amended Complaint on June 21, 2013. On that same day Plaintiffs moved to remand the case to state court. Judge Isgur then transferred the adversary proceeding to this court on June 26, 2013. Defendants' objected to Plaintiffs' Motion for Remand.

Defendants filed their Motion to Dismiss the Amended Complaint on July 22, 2013. Plaintiffs filed their Motion for Leave to File Third Amended Complaint on August 16, 2013. Defendants again moved for dismissal of the complaint on August 22, 2013. This court held a hearing on August 26, 2013, at which time the court gave Plaintiffs one final opportunity to amend their complaint. On September 9, 2013, Plaintiffs filed the Motion for Leave to File Fourth Amended Complaint and Defendants objected on October 3, 2013, and again moved for dismissal. A hearing was held on November 12, 2013, and the court took the matter under advisement.

## RELEVANT FACTS ASSUMED TO BE TRUE

### 1.  Pre-Bankruptcy

Shipley Garcia owned and operated two Harley-Davidson dealerships (the "Dealerships"). When Shipley Garcia purchased the Dealerships from Ted Cureton ("Cureton") in 2009, Harley-Davidson Motor Company, Inc. ("Harley Davidson") approved Shipley Garcia

to become the owner and operator of the Dealerships. Shipley Garcia encountered financial difficulties and fell behind on its obligations to its creditors. Shipley Garcia sold inventory out of trust and Harley-Davidson Credit Corp. ("Harley Credit"), the primary inventory floor plan lender, exercised its right to have proceeds of retail financing loans transferred directly to Shipley Garcia's financing account to reduce the delinquency owed by Shipley Garcia to Harley Credit (referred to by Shipley Garcia as "retail offset").

Harley Credit pursued its rights in state court by seeking a temporary restraining order and a writ of sequestration and replevin of collateral. Thereafter, Harley Credit, Shipley Garcia, and Mr. Garcia, among others, submitted to the state court an Agreed Order for Issuance of Writ of Sequestration and Replevin of Capital (the "Agreed Order"), which was reviewed, approved and signed as agreed to by counsel for Shipley Garcia and Mr. Garcia. The Agreed Order included the following terms:

- "All objections to the form of this Order, its enforceability and/or its compliance with the Texas Rules of Civil Procedure and/or the Uniform Commercial Code are hereby waived by the parties."

- "The parties voluntarily waive hearing on this Order and agree to this Court entering this Order against [Shipley Garcia, Mr. Garcia and the other related parties]."

- "IT IS FURTHER ORDERED that the Clerk of this Court issue a writ of sequestration concerning the above-described Collateral.  The writ must command the sheriff or constable to sequester and hold the Collateral by locking all doors to the Stores, unless and until [Harley Credit] takes possession of the Collateral according to the provisions of this Order and the Sheriff is hereby ordered to provide [Harley Credit] access to the Stores and/or release the Collateral to Harley Credit upon demand."

- "IT IS FURTHER ORDERED that [Shipley Garcia, Mr. Garcia and the other related parties] will voluntarily surrender to [Harley Credit] all of the Collateral as defined in Exhibit B attached to this Order including, without limitation, everything in the Stores such as motorcycles, parts, accessories, general merchandise, furniture, fixtures, accounts receivable, cash and other personal property assets not located in the Stores and [Harley Credit] is authorized to take possession and dispose of the Collateral in accordance with the terms of the Agreements, as defined

below [(the loan agreements with Harley Credit)], and the Uniform Commercial Code."

● "IT IS FURTHER ORDERED that [Shipley Garcia, Mr. Garcia and the other related parties] turn over the keys to the Stores to [Harley Credit] immediately, but in no event later than one hour after service of this Order on [Shipley Garcia's/Mr. Garcia's] counsel by facsimile or email."

● "IT IS FURTHER ORDERED that [Shipley Garcia, Mr. Garcia and the other related parties] transfers and assigns [sic] to Harley Credit all of [Shipley Garcia's/Mr. Garcia's/other related parties'] right, title, and interest in said Collateral."

Following its agreement to entry of the Agreed Order in state court, Shipley Garcia filed for bankruptcy protection that same day, January 5, 2011.

## 2.  Post-Bankruptcy

### a.  The Cureton Action and Settlement

After filing for bankruptcy in early 2011, Shipley Garcia and its principals (including Mr. Garcia) sued Cureton, alleging fraud associated with Shipley Garcia's acquisition of the Dealerships from Ted Cureton ("Cureton"), and claiming that their $7 million promissory note to Cureton was a fraudulent conveyance (the "Cureton Action").  Cureton counterclaimed in that action for approximately $6 million still owing under the note.

The claims against and asserted by Cureton in the Cureton Action, along with some other claims among Shipley Garcia, Mr. Garcia and Shipley Garcia's other principal, were resolved via a settlement agreement (the "Cureton Settlement Agreement"). A copy of the Cureton Settlement Agreement was filed with this Court along with Shipley Garcia's motion to approve the settlement.  That motion was granted on March 25, 2013.  The Cureton Settlement Agreement provided for mutual releases in exchange for certain payments and assignments of claims and rights of recovery.

### b.  The Asset Sale

On June 24, 2011, this Court entered its "Order Authorizing and Approving Sale of Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances" in Shipley Garcia's main bankruptcy case (the "Sale Order"), authorizing the Sale of the Dealership assets to South Texas Spokes, LLC ("STS"). STS was a defendant in the Original Petition but is no longer named in subsequent complaints. The Sale Order was the culmination of a marketing and sale process that was proposed by Shipley Garcia, and approved by the Court, after notice to all relevant parties.

The last round of bids in the Sale auction was concluded in and presided over by this Court on April 25, 2011.  The fairness of the auction and bidding procedures is evidence by the following:

●  This Court concluded the last round of bids of the auction in open court;

●  There were five participants in the auction;

●  During the auction but prior to the Court's oversight, there were four overbids to the stalking-horse bid;

●  The second place bidder objected that it was not given a reasonable opportunity to overbid during the auction process that occurred outside the Court;

●  The Court afforded that bidder an opportunity to overbid in open court, which that bidder exercised, entering a bid that was $370,000 higher than the then-highest bid;

●  The auction winner, STS, then lodged a further overbid, winning the auction with the final and highest bid of $6,020,000.

The Sale Order entered approximately two months later contained findings of fact and conclusions of law and directives, including the following: (a) "[a]dequate notice of the Motion has been given"; (b) the Sale was "in the best interests of the Debtor, its estate, its creditors and the parties in interest"; (c) "all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets" pursuant to "[b]idding [p]rocedures [that] were substantively and procedurally fair to all parties"; (d) the purchase agreement was negotiated "at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m)"; and (e) the purchase price constituted "fair consideration and fair value" for the assets and the transfers and transactions "may not be avoided under section 363(n) of the Bankruptcy Code."

Accordingly, STS was vested with all right, title and interest in the assets "free and clear" of all other "interests" (as defined in the Sale Order). Further, the Sale Order specifically provided that "no person shall take any action to prevent, enjoin or otherwise interfere with the consummation of the transactions contemplated in or by the [purchase agreement], the [b]idding [p]rocedures or [the Sale] Order."

Plaintiffs appear to assert at least eight separate causes of action against the Moving Defendants – negligent misrepresentation, fraud in the inducement, fraud, abuse of process, usury, breach of the duty of good faith and fair dealing, state antitrust violations and civil conspiracy – but despite four amendments and several hearings on motions to dismiss, the claims do not meet the minimum pleading requirements.

**<u>DISCUSSION</u>**

Each of the causes of action in Plaintiffs' Fourth Amended Complaint is deficient under Rule 7012(b), F.R.Bankr.Pro. (applying Rule 12(b)(6), F.R.Civ.Pro.) and the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the Fourth Amended Complaint does not satisfy the particularity requirements of Rule 7009(b), F.R.Bankr.Pro. (applying Rule 9(b), F.R.Civ.Pro.), for pleading fraud. In addition, the claims suffer from substantive deficiencies that bar them as a matter of law. Plaintiffs had numerous opportunities to craft a sufficient pleading but failed. Accordingly, the Court finds that the Motion for Leave to File Fourth Amended Complaint should be denied and the Motion to Dismiss should be granted.

**1.     Dismissal Under Rule 9(b), F.R.C.P.**

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud.  Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). Rule 9(b) applies to all cases where the "gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (internal quotation marks and quoting citation omitted).

In the Fifth Circuit, Rule 9(b) requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). In other words, Rule 9(b) requires a plaintiff to lay out the "who, what, when, where, and how" of the fraud. *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (internal quotation marks and quoting citation omitted).

Rule 9(b) also requires that a plaintiff allege these facts as to "each individual defendant," rather than lumping the defendants together in their allegations. *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001). Rule 9(b) ensures that "defendants can effectively respond to plaintiffs' allegations, to prevent the filing of baseless complaints to obtain discovery on unknown wrongs, and to protect defendants from unfounded allegations of wrongdoing which might injure their reputations." *Id.*

Plaintiffs' claims for negligent misrepresentation, fraud in the inducement, fraud and abuse of process are governed by Rule 9(b).  A claim for fraud requires the following:

> (1) Defendant[s] made a representation to Plaintiffs, (2) the representation was material, (3) the representation was false, (4) Defendant[s] made the representation with knowledge that it was false or made it recklessly, as a positive assertion without knowledge of its truth, (5) Defendant[s] made the representation with the intent that Plaintiffs would act upon it, (6) Plaintiffs relied on the representation, and (7) the representation caused Plaintiffs injury.

- - *Motten v. Chase Home Financing*, 831 F. Supp. 2d at 996 (S.D.Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)).

Plaintiffs' fraud in the inducement claim requires the same elements, as well as proof that Plaintiffs were induced to enter into a binding contractual relationships as a result. *In re Patlan*, 350 S.W.3d 189, 198 (Tex. App. – San Antonio 2011, no pet.).

Under Texas law, a claim for negligent misrepresentation requires four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

- - *Vickery v. Wells Fargo Bank, N.A.*, No. 2013 WL 321662 at *10; 2013 U.S. Dist. LEXIS 11134, at *28-29 (S.D. Tex. Jan. 28, 2013) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

And a claim for abuse of process requires the following three elements:

> (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damage as a result of the illegal act.

- - *Montemayor v. Ortiz*, 208 S.W.3d 627, 649 (Tex. App. – Corpus Christi 2006, pet. denied).

**2.      Dismissal Under Rule 12(b)(6), F.R.C.P.**

Even in cases where Rule 9(b) does not apply, dismissal is proper when a complaint fails to state claims upon which relief can be granted. Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, a plaintiff must plead factual allegations that allow the Court to draw the reasonable inference that the defendant is liable for the alleged conduct. *Id*. Thus, allegations of fact must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a mere "speculative level." *Twombly*, 550 U.S. at 555.

While detailed factual allegations are not required under this framework, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Naked assertions devoid of further factual enhancement" that are "merely consistent with a defendant's liability" are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Moreover, a plaintiff's conclusory allegations are "not entitled to the assumption of truth," and therefore a court may look past such conclusory allegations in order to examine the pleaded facts and determine their adequacy. *Iqbal*, 556 U.S. at 678-79.

None of the causes of action alleged in Plaintiffs' Fourth Amended Complaint meets this standard. Rather, the Fourth Amended Complaint primarily contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id*. (quoting citation omitted). The unsupported state of Plaintiffs' claims after four amendments indicates that Plaintiffs have no other facts to make their claims sufficient. Thus, all of Plaintiffs causes of action should be dismissed under *Iqbal* and *Twombly*.

**3.  Negligent Misrepresentation, Fraud in the Inducement, Fraud and Abuse of Process.**

    **a.  Overview of the Claims.**

Plaintiffs' fraud and misrepresentation claims can be categorized into four general areas of alleged false statements.

        1.) The "Cureton Claim" – alleging that prior to Shipley Garcia's acquisition of the Dealerships, Harley Davidson directed Shipley Garcia to the former owner of the Dealerships for business information, knowing that the former owner would provide false information.

        2.) The "Peer Group Claims" – alleging that prior to Shipley Garcia's acquisition of the Dealerships, Harley Davidson provided inaccurate dealer peer group information, on which Shipley Garcia partially based its business plans and projections that Harley Davidson subsequently reviewed and approved in the process of approving Shipley Garcia as a dealer.

        3.) The "Approval Process Claims" – alleging that Shipley Garcia was deceived by Harley Davidson's and Harley Credit's approval of its dealer application into thinking that the business would be viable, and that Harley Credit would be financially advantageous to the Dealerships.

4.) The "Payment Terms Claims" – alleging that Harley Davidson and Harley Credit falsely represented that payments to Harley Credit for financed motorcycles were due 15-30 days after retail sale but later changed the payment policies to shorten the due dates.

Although Plaintiffs' Fourth Amended Complaint recites the elements for each of these claims in some form, they remain insufficiently pleaded with the requisite particularity to survive a motion to dismiss. While Plaintiffs' Fourth Amended Complaint is more detailed, it confirms that Plaintiffs are complaining primarily about alleged false promises to do something in the future, as opposed to representations of existing fact, and therefore Plaintiffs do not have a claim. *Herrmann Holdings Ltd. v. Lucent Techs., Inc.,* 302 F.3d 552, 565 (5th Cir. 2002) (finding that amended allegations revealed the plaintiffs' claims were based on inactionable promises of future performance). Moreover, Plaintiffs contentions are directly refuted by the plain language of their contracts with Harley Davidson and Harley Credit. Thus, allowing further amendment would be futile.

**b.  The Claims Should be Dismissed**

Plaintiffs were allowed numerous attempts to plead their claims with the particularity required by the rules, but failed to do so. For both their fraud and negligent misrepresentation claims, Plaintiffs were required to state the "who, what, when, where, and how" of the alleged false statements. *Williams*, 112 F.3d at 179. The Fifth Circuit "interprets Rule 9(b) strictly," requiring answers to each of those questions before a claim will be permitted to proceed. *Herrmann Holdings*, 302 F.3d at 564-65. The particularity rule is applied "with force, without apology." *Williams*, supra at 178. For each of the claims discussed below, Plaintiffs fail to answer the essential questions.

### i.    The Cureton Claim.

The Cureton Claim is insufficiently pled because the fraud averments are not pled with the required particularity of Rule 9(b). Moreover, they are conclusory statements of wrongdoing which are insufficient under *Twombly*. One sentence in the Fourth Amended Complaint alleges in conclusory fashion that Cureton provided false information after Harley Davidson allegedly directed Plaintiffs to speak with Cureton. The sentence does not say 1) what Cureton said, 2) when or where he said it, 3) why or how it was false, whether Harley Davidson knew what Cureton said, or 5) why or how Harley Davidson allegedly knew Cureton would provide false information. Thus the allegations do not set forth the "who, what, when where, and how" of the alleged false statements. *Williams v. WMX Techs., Inc., supra* at 179. Moreover, the allegation is a conclusory statement of wrongdoing, unadorned with any supporting facts that could plausibly support a claim. *Twombly, supra* at 570.

### ii.    The Peer Group Claim.

The Peer Group Claim does not allege and cannot plausibly show that Plaintiffs' decision to proceed with a multi-million dollar acquisition of the two dealerships was based entirely on the peer-group financial information provided by Harley Davidson whether that information was faulty or not. Plaintiffs must show that they justifiably and reasonably relied on the allegedly false representation. *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.,* 88 F.3d 347, 358-60 (5th Cir. 1996). "[T]here must be a reasonable relation between the contents of the defendant's misrepresentation and the action the plaintiff took in reliance. . . judged in light of the plaintiff's intelligence and experience." *Id.* at 358(citations omitted). Not only is it implausible that business people would base an important decision entirely on a comparison of similar businesses, but Shipley Garcia hired its own advisors to perform due diligence.

Moreover, Shipley Garcia operated the business before the purchase and observed its performance prior to closing on the acquisition. Plaintiffs therefore cannot demonstrate reasonable or justifiable reliance on the alleged misrepresentations even if they occurred. Finally, the Motorcycle Dealer contract that Shipley Garcia and Harley Davidson executed specifically disclaimed and excluded an prior oral or written promises or representations. Mr. Garcia and Shipley Garcia explicitly agreed when applying to become a dealer that they were relying only upon their own investigation and due diligence and not upon any representations made by Harley Davidson. A clear contractual disavowal of reliance precludes fraudulent inducement, fraud and non-disclosure claims as a matter of law. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W. 2d 171, 180-81 (Tex. 1997). This is especially true where, as here, Mr. Garcia is a licensed attorney in Texas.

### iii.    The Approval Process Claim.

Plaintiffs' Approval Process Claim alleges that Shipley Garcia's approval of Shipley Garcia's business plan creates liability for damages when the business did not meet Shipley Garcia's projections. Plaintiffs also allege that Harley Davidson's suggestion that Harley Credit would be a financial benefit to Shipley Garcia amounts to a misrepresentation. An opinion as to a future event does not support a cause of action for fraud or misrepresentation unless it is demonstrated that the speaker had, at the time of the alleged statements, a present knowledge of falsity or a present intent not to perform. *Clardy, supra* at 359.

While Plaintiffs' Fourth Amended Complaint is more detailed, it confirms that Plaintiffs are complaining primarily about alleged false promises to do something in the future, as opposed to representations of existing fact, and therefore Plaintiffs do not have a claim. *Herrmann Holdings supra.* at 565 (finding that amended allegations revealed the plaintiffs' claims were based on inactionable promises of future performance). Moreover, Plaintiffs contentions are directly refuted by

the plain language of their contracts with Harley Davidson and Harley Credit. Thus allowing further amendment would be futile.

### iv.  The Payment Terms Claim.

Plaintiffs' claim that Harley Davidson misrepresented when payments were due for sold motorcycles and other products fails as a matter of law. The contracts between the parties refute Plaintiffs' claim because they specifically state that Shipley Garcia was required to pay its obligations immediately when due and that payment for motorcycles financed through Harley Credit were due upon the sale of the motorcycle (or two years from date of the invoice if not sold by that time). Plaintiffs' claim fails because they were not reasonable in relying on the alleged misrepresentation, if in fact one occurred, in the face of the contractual language setting out the payment terms. Moreover, the facts indicate that just three months after closing on the purchase of the Dealerships, Shipley Garcia was in default on its obligations to Harley Credit and had already sold nearly $250,000 of inventory out of trust. Even if Harley Credit did not require strict compliance with payment terms until Shipley Garcia's default became severe, the parties were entitled to rely upon and enforce their written agreement.

## 4.  Other Claims.

### a.  Abuse of Process

With respect to the abuse of process claim, Plaintiffs allege that Harley Credit, Estes Okon Thorne & Carr, PLLC (f/k/a Taber Estes Thorne & Carr, PLLC ("EOTC") and Mr. Contreras "use[d] the legal process to once and for all finally put Shipley Garcia out of business," and filed a petition and temporary restraining order, a "spurious motion for contempt which was never heard," and an agreed order in state court that was purportedly not actually agreed to by Plaintiffs.  Plaintiffs do not explain how the allegations give rise to an abuse of process claim.  "[A] formulaic recitation of the elements of a cause of action will not do,"

*Twombly*, 550 U.S. at 555.  Plaintiffs do not allege any specific conduct as to Mr. Contreras. Plaintiffs fail to allege any facts showing that the conduct of Mr. Contreras or EOTC was undertaken for any reason other than the discharge of their duties to their client.

Plaintiffs rely on a term contained in the Agreed Order that they allege was not recited into the record by the parties in a hearing before the State court. However, the transcript indicates that not all of the terms of the Agreed Order executed and entered the following day were specifically dictated into the record at the hearing the day before. Moreover, Plaintiffs' own attorney signed the Agreed Order with all the terms included and is charged with knowledge of its contents. Accordingly, the claims should be dismissed.

### b. Usury

Plaintiffs failed to provide the required statutory notice necessary for a usury claim under Texas law. At least sixty-one days before bringing a usury lawsuit, the obligor must "give the creditor written notice stating in reasonable detail the nature and amount of the violation." TEXAS FINANCE CODE §305.006(b). For this reason alone the usury claim should be dismissed.

In Texas a usury claim requires (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower.  *First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex. 1994). Plaintiffs claim that, by operation of the Agreed Order, Harley Credit took possession of Shipley Garcia's property which was Harley Credit's collateral and then asked for additional payment from Shipley Garcia at the time of the section 363 asset sale, thereby requesting a usurious payment. However, Shipley Garcia filed for bankruptcy protection the same day that the Agreed Order was executed and Harley Credit did not take possession of the property assigned to it earlier that day. Instead, Harley Credit agreed that Shipley Garcia would remain debtor in

possession and continue to operate the Dealerships so that they could be sold as a going concern. This Court's Sale order entered six months later, after the section 363 sale and auction, specifically states that Shipley Garcia held the right, title and interest in the Dealerships and was transferring those interests to the auction winner. Therefore, at the time Plaintiffs allege that Harley Credit demanded and sought additional payment, Shipley Garcia was title holder of the assets and Plaintiffs' usury claim fails on the facts and documents before the Court.

### c. State Antitrust Violation.

Texas' state antitrust statutes "shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes…". Tex. Bus. & Com. Code § 15.04. Bare allegations of an antitrust conspiracy are not sufficient to state an antitrust claim; rather, there must be enough facts pled which, taken as true, plausibly suggest the existence of an actual anti-competitive agreement. *Twombly*, 550 U.S. at 556. Allegations of parallel conduct and a mere assertion of conspiracy "without some further factual enhancement … stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557 (internal quotation marks and quoting citation omitted). For an antitrust claim, the complaint needs to include as much factual detail as may be required to show that the plaintiff has a plausible claim. *See id.* at 558.

Plaintiffs' claim of an antitrust violation alleges that Defendants "conspired to surreptitiously acquire Shipley Garcia's property, to injure Shipley Garcia and to monopolize, control and restrain trade of Harley-Davidson motorcycles, parts and motor clothes within the state by constructively mandating that, among other things, Shipley Garcia (and other dealers) use Harley Credit for financing in order to sell its motorcycles" is a violation of Texas' antitrust statutes and permits Plaintiffs to bring a suit for "unfair, discriminatory and anti-competitive practices" (without describing the practices at issue or how they were allegedly unfair,

discriminatory and anti-competitive).  The allegations do not satisfy *Twombly*'s requirement of facts to plausibly show the existence of an anti-competitive agreement.  *Twombly*, 550 U.S. at 556-58.  Plaintiffs do not state in their Fourth Amended Complaint which subsection of Texas Business & Commerce Code section 15 they allege has been violated by the Moving Defendants' alleged conduct; indeed, Plaintiffs only cite to "§ 15" of the Texas Code, seemingly referring to the entire Texas Free Enterprise and Antitrust Act.

Nor have Plaintiffs pled any facts regarding anti-competitive effects resulting from the alleged conduct, aside from the conclusory statement of "anti-competitive practices."  They claim that Harley Davidson and Harley Credit conspired and "used their business arrangement to exercise control over and exert such financial pressure on Shipley Garcia and – based on information and belief – other dealers as well" and "used unfair, unreasonable, arbitrary and discriminatory financial requirements, practices and controls to surreptitiously acquire Shipley Garcia's property and put Shipley Garcia out of business," but there is no allegation as to what any of those purportedly unfair and unreasonable financial practices were or how any of them injured competition. Plaintiffs' pleadings are not sufficient to adequately state the grounds for Plaintiffs' requested relief or to put Defendants on appropriate notice of the claims asserted against them.  *See* Fed. R. Civ. P. 8(a); *see also Twombly*, 550 U.S. at 555.

Plaintiffs assert that Harley Credit's alleged change in wholesale financing terms resulted in a "chilling effect" on the sale of motorcycles and other products and a reduction in the number of motorcycles and products reasonable available to Shipley Garcia to sell to customers. However, as noted above, Harley Credit did not change the wholesale financing terms and the only reason Shipley Garcia was unable to acquire more motorcycles for sale to customers was its failure to pay for those already sold. Moreover, Harley Credit's contractually permitted actions to protect its security interests cannot constitute an antitrust violation. To state an antitrust claim, Plaintiffs must allege not only injury to their business but also an antitrust injury – that is, an injury "of the type the antitrust laws were intended to prevent." *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007). Here, Plaintiffs allege that Shipley Garcia's business was harmed by Harley Davidson's and Harley Credit's conspiracy to restrain trade by requiring that Shipley Garcia use Harley Credit for financing. But, even if that allegation were true, it does not amount to an injury "of the type the antitrust laws were intended to prevent." *Norris*, 500 F.3d at 465. Plaintiffs claim the alleged conduct allowed Harley Davidson and Harley Credit to "surreptitiously acquire Shipley Garcia's property and to put Shipley Garcia out of business", but that is not an antitrust injury.  Without an anticompetitive impact, there can be no antitrust injury and the claim fails.  *Id*. at 465, 469 (affirming dismissal of antitrust claim for lack of antitrust injury).  Plaintiffs did not plead a detrimental impact on the market, only a detrimental impact to themselves. Plaintiffs also did not plead sufficient facts to suggest an illegal tying. For all of these reasons, Plaintiffs' antitrust claim is substantially deficient, both legally and factually, and should be dismissed.

### 5.  Plaintiffs' Claims Represent An Impermissible Collateral Attack on the Sale Order.

Two years after Shipley Garcia proposed and obtained Court approval for the Sale, Plaintiffs now seek to undo the Sale and its economic effect and to recover damages.  Plaintiffs' claims revolve around the sale of Shipley Garcia's assets in bankruptcy and amount to a collateral attack on the Sale Order.  Rather than take possession of its collateral as it had the right to do, Harley Credit consented to Shipley Garcia's Sale of all the assets pursuant to section 363 of the Bankruptcy Code. This Court conducted an auction of the Shipley Garcia assets and issued the Sale Order, which was not appealed.  Plaintiffs' allegations wage a collateral attack on the Sale Order. Plaintiffs' claim that Harley Davidson and Harley Credit "placed the dealerships with South Spokes, LLC [sic],"and that, after certain state-court proceedings in December 2010 and January 2011, and after Shipley Garcia's bankruptcy petition on January 5, 2011, "Harley Credit subsequently sought additional payment from Shipley Garcia".  Plaintiffs claim that they "merely seek to recover for damages resulting from the conduct of the Defendants," but a portion of that necessarily relates to the act of Harley Davidson and Harley Credit allegedly "plac[ing]" the Dealerships with STS through the bankruptcy auction and Sale as well as the allegedly wrongful conduct of Harley Credit in seeking "additional payment" from Shipley Garcia during the bankruptcy.  The well-attended auction, which was presided over by this Court, set the market value of the assets, yet Plaintiffs' claims implicitly challenge that result by stating that the proceeds received were deficient by several million dollars. Plaintiffs continue to challenge the Sale Order. Federal Rule of Civil Procedure 60(b) and the doctrines of *res judicata* and judicial estoppel all prohibit what Plaintiffs attempt here.

**a.Plaintiffs' Claims are Barred by Fed. R. Civ. P. 60(b).**

Federal Rule of Civil Procedure 60(b) requires that relief from a final order be sought within one year of the order when the ground for relief is fraud or other misconduct of the parties. Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(c). A debtor or other interested party cannot avoid the one-year bar of Rule 60(b) by merely filing a separate action for fraud in state court. *See*, *e.g.*, *Factory Mut. Ins. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 859-61 (Bankr. N.D. Tex. 2012) ("This [fraud and civil conspiracy claim] is an attack on the sale, pure and simple."); *Gazes v. Delprete (In re Clinton St. Food Corp.)*, 254 B.R. 523, 531-32 (Bankr. S.D.N.Y. 2000) (dismissing as time barred under Rule 60(b) common law fraud claims because they are "indistinguishable" from a Section 363(n) claim); *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012, 1018 (7th Cir. 1988). Plaintiffs' claims relating to the Sale are time-barred by Rule 60(b) because they were not brought within one year of the date of entry of the Sale Order (June 24, 2011). *See Gazes*, 254 B.R. at 531 ("If a party could transform a § 363(n) damage claim into a common law claim and avoid the one year period of limitations, § 363(n) would become meaningless.").

**b. *Res Judicata* Also Bars Plaintiffs' Claims.**

Even if Plaintiffs' claims are not untimely under Rule 60(b), they are still barred by *res judicata.* A section 363 sale order is a final judgment entered by a court of "competent jurisdiction," and where the parties and claims are the same, the order is *res judicata*, and bars collateral attacks on the sale. *See, e.g., In re Baudoin*, 981 F.2d 736, 740-44 (5th Cir. 1993); *Hendrick v. Avent*, 891 F.2d 583, 588-89 (5th Cir. 1990) (declining to interpret adversary complaint asserting claims for fraud and misrepresentation as a Rule 60(b) motion and affirming summary judgment in favor of defendants on *res judicata* grounds); *Southmark Props. v. Charles House Corp.*, 742 F.2d 862 (5th Cir. 1984) (finding fraud-based claims brought five years after bankruptcy sale barred by *res judicata*).

Plaintiffs raise the same claims that were resolved in the Sale Order, but the Court's findings and conclusions in that Order are directly inconsistent with the crux of Plaintiffs' allegations in this suit and, therefore, bar Plaintiffs' claims here. At Plaintiffs' urging, the Court found the Sale to be in the best interests of creditors, negotiated at arm's length,d without collusion or fraud, and consummated in good faith within the meaning of Section 363(m), under circumstances not subject to avoidance or damages under Section 363(n).  Yet Plaintiffs now claim the exact opposite: that Harley Davidson and Harley Credit manipulated the auction and Sale and "placed" the Dealerships with the auction winner STS and that Harley Credit "sought additional payment" from Shipley Garcia during the bankruptcy causing Plaintiffs' damages. Plaintiffs' current claims involve the same "nucleus of operative facts" and are barred by *res judicata*. *See*, *e.g.*, *Baudoin*, 981 F.2d at 743; *West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, 2011 WL 6936361 at *11; 2011 Bankr. LEXIS 5183, at *29-33 (Bankr. S.D. Tex. 2011).

The same parties were also involved in both proceedings. Mr. Garcia was involved as a member/owner of the Debtor Shipley Garcia. *See Southmark Props. Supra* at 742 F.2d 869-70 (finding stockholder/president of debtor and guarantor of debt to have been involved in bankruptcy proceeding).  Harley Davidson was involved in the Sale process – it attended the auction on April 25, 2011, the Sale hearing on June 23, 2011, and satisfied a condition precedent to the Sale by issuing a letter of intent to STS to conditionally approve STS as the new dealer.  Harley Credit was  involved in the Sale, and received a substantial portion of the Sale proceeds.  Mr. Contreras is in direct "privity" with Harley Credit because he is an employee (in-house counsel) of Harley Credit who was adequately represented by Harley Credit in the Sale process.  *See, e.g., West*, 2011 Bankr. LEXIS 5183, at *18-19.  And EOTC was involved as prior outside counsel for Harley Credit.

Thus, each of the traditional elements of *res judicata* is satisfied here. Even if that were not the case, however, *res judicata* would still bar Plaintiffs' claims. "A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just parties to a judgment or persons with notice of the proceeding." *Met-L-Wood*, 861 F.2d at 1017 (barring common law claims following a section 363 sale even though not all parties were the same). *See also Hereford Biofuels*, 466 B.R. at 849 (same, citing *Met-L-Wood*); *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 731-32 (8th Cir. 2004) (same, citing *Met-L-Wood*). Thus, *res judicata* does not require strict identity of the parties, and this is particularly true in a section 363 sale. *See, e.g., West*, 2011 Bankr. LEXIS 5183, at *18-19. For all of these reasons, Plaintiffs' claims that challenge the results of the Sale are barred by Rule 60(b), *res judicata* and traditional principles of finality in bankruptcy sales, *see Baudoin*, 981 F.2d at 730 (noting important interest in finality of judgments in bankruptcy cases), and they should be dismissed with prejudice.

### c.  Judicial Estoppel Forecloses Plaintiffs' Collateral Attack.

Plaintiffs should additionally be barred from upsetting the result of the Sale Order by the doctrine of judicial estoppel. The "classic application" of judicial estoppel is the "preclusion of inconsistent positions by a party to gain two distinct advantages from the court." *Mestena, Inc. v. Atravasada Land & Cattle Co. (In re Atravasada Land & Cattle, Inc.)*, 308 B.R. 255, 273 (Bankr. S.D. Tex. 2008). Here, Shipley Garcia received the benefit of the proceeds of the Sale by representing the Sale to have been in good faith and negotiated at arm's length, and now Shipley Garcia seeks to obtain a second advantage (and additional funds) by contending that the Sale process in which it participated was tainted and manipulated. Judicial estoppel bars these inconsistent positions. The application of judicial estoppel is particularly important in bankruptcy proceedings,

22 / 24

where the Court is "forced to rely on the representations of the parties in pleadings and Court appearances in the furtherance of a 'speedy and efficient' administration of a case."  *Id.* (quoting citation omitted).

> Judicial estoppel requires three elements:
>
> (1) the party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

- - *Id.* at *273-74.

Courts also look to whether the change in positions was inadvertent. *See id.* at *275. Each element is satisfied here. Shipley Garcia's position in this litigation is clearly inconsistent with the representations that it made to the Court in seeking the approval of the Sale of Shipley Garcia's assets in the Dealerships to STS. Far from being inadvertent, this complete reversal of position is intentional and impermissible. Shipley Garcia's prior position was accepted by the Court, as evidenced by the very fact that the Sale Order was entered. Shipley Garcia would clearly derive an unfair benefit, and the Defendants would suffer an unfair detriment, if Plaintiffs are not estopped – having received the proceeds of the Sale for the benefit of Shipley Garcia's estate and creditors after moving the Court to approve the Sale, Plaintiffs now seek to recover additional funds and have this Court undo the result of the Sale. The "cornerstone" of the doctrine is to "prevent a litigant from setting up the system to their advantage, and, by simply reversing their story in another proceeding, attempting to obtain an unfair advantage." *Mestena*, 388 B.R. at 276. Plaintiffs are judicially estopped from reversing their story in this proceeding and upsetting the result of the Sale Order.

## CONCLUSION

For all of the reasons set forth above, the Court finds that Plaintiffs should not be allowed to file their Fourth Amended Complaint and Defendants' Motion to Dismiss should be granted.

It is so **ORDERED**.

SIGNED 03/28/2014.

Richard S. Schmidt
United States Bankruptcy Judge